**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| OSAGE NATION, a federally-recognized Indian tribe; OSAGE NATION TAX COMMISSION, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | No. 06-CV-67-TCK-FHM |
| STATE OF OKLAHOMA ex rel. OKLAHOMA TAX COMMISSION; GOVERNOR BRAD HENRY, Governor of the State of Oklahoma, THOMAS KEMP, JR., Chairman of the Oklahoma Tax Commission; JERRY JOHNSON, Vice Chairman of the Oklahoma Tax Commission; CONSTANCE IRBY, Secretary-Member of the Oklahoma Tax Commission, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**O R D E R**

Before the Court is Plaintiff Osage Nation's Motion to Compel Arbitration (Docket No. 4). A hearing on this Motion and Plaintiffs' Application for Motion for Temporary Restraining Order and Motion for Injunctive Relief (Docket No. 3) was conducted on February 6, 2006.

**I.    General Background**

Pursuant to the decision in *Oklahoma Tax Commission v. Citizen Band of Potowatomi Indian Tribe of Oklahoma*, 498 U.S. 505 (1991), the Oklahoma Legislature adopted a statute authorizing the Governor of Oklahoma to enter into compacts with Indian Tribes governing the sale and taxation of cigarettes and other tobacco products in Indian Country.  *See* OKLA. STAT. tit. 68, § 346.  Plaintiff Osage Nation ("Nation") and Defendants State of Oklahoma ("State") and Governor of Oklahoma,

Brad Henry ("Governor Henry"), entered into such a compact on December 13, 2003 (the "Compact").[1]

The Oklahoma Cigarette Stamp Tax Act, OKLA. STAT. tit. 68, § 301, *et seq.*, imposes a tax upon the consumer who purchases cigarettes. The tax is prescribed, as to cigarettes sold to tribally owned and/or licensed retailers, by the Compact. The tax is "advanced" by the wholesaler, who is required to evidence payment of the tax by affixing the proper stamp to each pack of cigarettes sold. The tax is "passed through" to the consumer. *See* § 302 (stating tax is levied upon consumer).

Under the current compacts with various Indian Tribes, there are six different tax rates. According to Defendants, reports of sales filed with the Oklahoma Tax Commission ("OTC") indicated that sales of the lowest tax rate stamp ($0.0575 per pack) grew at a phenomenal pace, while sales of products with higher tax rate stamps were lower than could reasonably be expected. Defendants therefore concluded that retailers who were not entitled to the lowest tax rate stamp were obtaining cigarettes from retailers who were.

On January 13, 2006, Governor Henry approved and signed an Emergency Rule ("ER") that was designed to curtail the suspected retail-to-retail sales. The ER requires wholesalers to insure that cigarettes and other tobacco products that sold at reduced tax rates are going to retailers who are entitled to those rates. Defendants maintain, "[t]he ER does not limit the number of packs of cigarettes which a tribal retailer can buy at the tax rate to which it is entitled. Rather, the ER prohibits wholesalers from selling cigarettes at a reduced tax rate which are destined for retailers not entitled to the reduced tax rate." (Defs.' Amended Resp. to Pls.' App. for Temporary Restraining

---

[1] The previous compact between the parties was entered into on February 17, 1993 and expired on February 17, 2003. The provisions of that compact are not relevant to the issue herein.

Ord. and Mot. for Inj. Relief, p. 2.) Indeed, the ER is specifically entitled, "Limitation on sale of number of packs of cigarettes at a reduced tax rate." Accordingly, the ER begins, "[s]ales of cigarettes by a wholesaler licensed by the [OTC] to a tribal retailer shall be limited as set forth herein to the number of packs of cigarettes at a reduced tax rate." OKLA. STAT. tit. 70, § 710:70-2-12. Among other things, the ER mandates wholesalers to sell only certain specified quantities of cigarettes to individual tribal retailers based on individual smokeshops' sales in 2004. Should a tribal retailer desire to purchase additional quantities of cigarettes, he must relate same to his wholesaler, who then must obtain "documented proof that the tribal retailer attempting the purchase has not and will not resell cigarettes to another tribal retailer." *Id.* at § 710:70-2-12(d). The ER further provides, "no tribal retailer may sell cigarettes at a reduced tax rate to any other retailer or to any person for subsequent resale." *Id.* at § 710:2-12(k).

Plaintiffs note that the Nation has its own revenue and taxation agency, the Osage Nation Tax Commission ("ONTC"). The ONTC has the responsibility of levying and collecting tax revenue for the Nation to be used for general governmental purposes. The ONTC licenses and regulates retail smoke shops selling cigarettes and other tobacco products within the Nation's jurisdiction and wholesalers who sell to Osage retailers. Wholesalers must also be licensed by the State.

In their challenge to the ER, Plaintiffs maintain the ER is unconstitutional in that it violates the Commerce Clause and the Contracts Clause of the United States Constitution and further, impermissibly infringes on the Nation's sovereignty and self-government.[2] Initially though, the

---

[2] On this latter point, Plaintiffs specifically note that neither the ONTC nor the Nation limits the amount of product that a licensed wholesaler may sell to a licensed retailers as long as the product bears the correct stamp.

3

Nation requests that the parties be compelled to arbitrate the issue of whether the ER violates the Compact.

## II.   Motion to Compel Arbitration

Article 11 of the Compact provides:

> Any dispute arising in the interpretation or performance of this Compact, which is not resolved by good faith negotiations within thirty (30) days, shall be subject to biding arbitration.  Arbitration may be invoked by either party following the negotiation period should the dispute remain unresolved.  Arbitrations shall be the exclusive means of resolving such disputes subject only to review by the United States District Court having jurisdiction and venue.

(Defs.' Resp. to Pls.' App. for Temporary Restraining Ord. and Mot. for Inj. Relief, Ex. 13, ¶ 11.) Paragraph one of the Compact explicitly provides that "all sales of cigarettes and tobacco products in Indian Country as defined by federal law shall be governed by the provisions of this Compact, when said sales are made by [tribal retailers]."   (*Id*. at ¶ 1.)

Prior to the enactment of the ER, Jim Gray, Principal Chief of the Osage Nation ("Chief Gray"), wrote to Governor Henry asking him not to enact the ER and instead requesting that the parties "enter into good faith negotiations in an attempt to resolve this dispute pursuant to Article 11 of the Compact."  (Pls.' Compl., Ex. D.)  There is nothing in the record indicating Governor Henry responded to Chief Gray's request.  In a second attempt to persuade Governor Henry to refuse to sign the ER, Chief Gray wrote a second letter on January 13, 2006.  This communication reiterated the previous demand for arbitration and stated:

> If, as your administration says, the Emergency Rule is aimed at stopping what you believe to be a violation of the Compact, then your remedy is not to unilaterally legislate the parties' rights through the Oklahoma Tax Commission.  Instead your remedy is to invoke arbitration under Article 11 of the Compact.  I remain prepared to defend, in arbitration, your Administration's charge that the Osage Tribe is in violation of the Compact.  Arbitration is the proper approach to take in this case, not an Emergency Rule that circumvents arbitration.

(*Id*. at Ex. F.)

At the hearing on the matter, Defendants took the position that no formal demand for arbitration had been made. In the alternative, Defendants maintained that there was no dispute at issue that invoked the arbitration provision of the Compact. Based on the language in the January 4, 2006 letter from Chief Gray to Governor Henry, the Court wholly disagrees. As quoted above, Chief Gray clearly made a demand for arbitration.

Arbitration is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*. *See Comanche Indian Tribe of Oklahoma v. 49, L.L.C.*, 391 F.3d 1129, 1132 (10th Cir. 2004). Under 9 U.S.C. § 4,

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

Thus, a party seeking to compel arbitration pursuant to § 4 of the FAA must establish that a valid agreement to arbitrate exists and that the asserted claims come within the scope of the arbitration clause. *Id*. The United States Supreme Court has determined that the FAA, "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Arbitration provisions are to be construed broadly to effectuate the strong federal policy evidenced by the FAA. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983). Any doubt regarding whether an issue is arbitrable must be resolved in favor of arbitration. *Id.* at 25.

*A. Defendants can be compelled to arbitrate the dispute.*

Defendants first argue that neither Governor Henry nor the OTC nor the OTC Commissioners are parties to the Compact and therefore cannot be compelled to arbitration. "A compact is a contract. It represents a bargained-for exchange between its signatories . . . ." and the signatories are bound by such contract. *See Kansas v. Colorado*, 533 U.S. 1, 20 (2001); *see also Florom v. Elliot Mfg.*, 867 F.2d 570, 575 (10th Cir. 1989), *reh'g denied*, 879 F.2d 801. As to Governor Henry, he is a signatory to the Compact, and is authorized by statute to enter into compacts with Indian Tribes. OKLA. STAT. tit., 68 § 346(c). As a signatory to the Compact and the person authorized by statute to act on behalf of the State, Governor Henry is a proper party to the arbitration proceedings and is subject to an order compelling arbitration. *See Artichoke Joe's v. Norton*, 216 F. Supp. 2d 1084, 1110-11 (E.D. Cal. 2002) (holding governor, named in official capacity, was proper party in action by tribe challenging constitutionality of statute prohibiting certain gaming machines because governor had specific duty under state law to negotiate and approve gaming compacts with tribe; observing claim against governor was "not based on any general duty to enforce state law"), *aff'd*, 353 F.3d 712 (2003), *cert. denied*, 543 U.S. 814 (2004). As to the OTC and the OTC Commissioners, while neither are signatories to the Compact, the OTC and the OTC Commissioners are the alter-ego of the State for purposes of executing and enforcing the Compact and the ER.[3] Therefore, they can also be compelled to arbitration. *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1460 (10th Cir. 1995) ("The district court's arbitrability determination includes ascertaining whether a duty to arbitrate exists upon a finding of alter ego.") (*citing International Ass'n of Heat & Frost Insulators, Local Union 42 v. Absolute Envtl. Serv., Inc.*,

---

[3]This finding has no bearing on Eleventh Amendment immunity issues that may arise.

814 F. Supp. 392, 403 (D. Del. 1993) ).

      *B.*      *The ER is within the scope of arbitrable issues pursuant to the Compact.*

The Tenth Circuit has adopted a test to determine whether a particular dispute falls within the scope of an agreement's arbitration clause. *See Cummings v. Fedex Ground Package System, Inc.*, 404 F.3d 1258, 1262 (10th Cir. 2005) (citation omitted). Initially, the Court must determine the breadth of the clause and classify it as broad or narrow. A "broad provision" is one that "refers all disputes arising out of a contract to arbitration." *Id.* at 1262. The clause at issue reads, "[a]ny dispute arising in the interpretation or performance of this Compact." The clause is classically broad. *See Louis Dreyfus Negoce S.A., v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218 (2nd Cir. 2001) (determining the clause "[a]ny dispute arising from the making, performance or termination of the Charter Party" as broad arbitration clause); *Spahr v. Secco*, 330 F.3d 1266, 1270 (10th Cir. 2003) (describing broad provisions as those requiring arbitration of "all disputes arising out of or relating to the overall contract"); *Unified Government of Wyandotte County/Kansas City, KS v. Inland Quarries, LLC,* No. 05-2436 2005 WL 3418498 at *3 (D. Kan. Dec. 12, 2005) (interpreting the clause "any disagreements relating to or arising from any one or more of the provisions of this Agreement" as broad arbitration clause). By contrast, the arbitration clause in *Cummings* is considered a narrow clause. The *Cummings* clause read,

> In the event FedEx Ground acts to terminate this Agreement (which acts shall include any claim by [plaintiff] of constructive termination) and [plaintiff] disagrees with such termination or asserts that the actions of [defendant] are not authorized under the terms of this Agreement, then each such disagreement (but no others) shall be settled by arbitration

*Cummings*, 404 F.3d at 1260. "'Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged

implicates issues of contract construction or the parties' rights and obligations under it.'" *Cummings*, 404 F.3d at 1261 (*quoting Louis Dreyfus Negoce S.A.*, 252 F.3d at 224).

Defendants argue extensively that ER is not within the scope of arbitrable issues under the Compact. In so doing, Defendants rely heavily on the expressed purpose of the Compact which reads, "[a]ll sales of cigarettes and tobacco products in Indian Country shall be governed by the provisions of this Compact, when said sales are made by Tribally-owned or tribally licensed businesses." (Def. OTC's Resp. to Pls.' Mot. to Compel Arb. Ex. 1, § 1.) Defendants maintain that in no way does the ER affect the sales regulated by the Compact. Here again, the Court disagrees with Defendants. The ER's application, by Defendants' own admission and the plain language of the Rule, is directed at the sale of cigarettes by wholesalers to tribal retailers licensed by a tribe and located in a tribe's Indian Country. *See* OKLA. STAT. tit. §, 70 § 710:2-12(k) ("No tribal retailer may sell cigarettes at a reduced tax rate to any other retailer or to any person for subsequent resale."). Even were the Court to agree with Defendants that they have a right to promulgate rules that regulate the sale of cigarettes by wholesalers licensed by the State without being in violation of the Compact, Plaintiffs maintain that the ER, by its very language and effect, *does* violate the Compact. Therefore, an arbitrable dispute has arisen. In sum, there is a clear dispute regarding the interpretation and performance of the Compact which requires the Court to compel arbitration.[4]

---

[4]Additionally, Plaintiffs have submitted evidence that indicates that even Defendants believe that the dispute at the heart of this matter—retail-to-retail sales—falls within the arbitration provision of the Compact. As example, Plaintiffs offer a letter dated August 1, 2005 from Oklahoma State Treasurer Scott Meacham ("Meacham") to Chief Gray wherein Meacham advises Chief Gray that certain smokeshops are suspected of retail-to-retail sales. Meacham further informs Chief Gray, "[t]he state believes that this practice, if occurring, would constitute a violation of the terms of your Tobacco Tax Compact with the State of Oklahoma . . ." (Pls.' Reply to Defs.' Resp. to Pls.' Mot. to Compel Arb., Ex. 1.) Finally, Meacham states that if Chief Gray notifies Meacham that Chief Gray believes this practice is permissible under the Compact,

"When parties use expansive language in drafting an arbitration clause, presumably they intend all issues that 'touch matters' within the main agreement to be arbitrated, while the intended scope of a narrow arbitration clause is obviously more limited." *Louis Dreyfus Negoce S.A.*, 252 F.3d at 225 (internal citation omitted).  The policy of the FAA requires a liberal reading of arbitration agreements that unquestionably requires the Court to compel this matter to arbitration.  *Moses H. Cone Memorial Hosp.*,  460 U.S. at 23.

### III.     Conclusion

Plaintiffs' Motion to Compel Arbitration (Docket No. 4) is GRANTED.  The parties are afforded ten days from the date of this Order to show cause why the Court should not stay the matter pursuant to § 3 of the FAA.  *See also Williams v. Imhoff*, 203 F.3d 758, 764 (10th Cir.2000).

 IT IS SO ORDERED this 27th day of February, 2006.

*/s/ Terence Kern*

TERENCE KERN
UNITED STATES DISTRICT JUDGE

---

Meacham would consider that notification the beginning of the negotiation period that must precede arbitration.  (*Id.*)

9